### HERMAN BAUMAN v. J. T. CHAMBERS.

Decided November 10, 1897.

**1. Trespass to Try Title—Administrator's Sale—Fraud.**

Defendant in trespass to try title, under proper pleadings invoking the equity powers of the district court, may attack an administrator's sale under which plaintiff claims, for fraud, as being in effect a sale by the administrator to himself, and by affecting the fraudulent purchaser with a trust compel him to hold the property for those entitled to it.

**2. Deed—Mutilated Record—Court and Jury.**

See opinion for mutilated record of a deed in evidence, held not sufficient to authorize the court to construe it as a conveyance of title, though sufficient, with other evidence, to be submitted to the jury.

APPEAL from Llano. Tried below before Hon. J. H. McLEAN, Special Judge.

The opinion of the Supreme Court upon certified questions in this case is reported in Bauman v. Chambers, 91 Texas, 108.

*Charles L. Lauderdale* and *W. T. Dalrymple*, for appellant.—1. Where an administrator purchases the land of his intestate at his own sale for a

grossly inadequate consideration and reports the sale as made to another, has it confirmed upon such report, and, as such administrator, conveys the land to such other person for his, the administrator's, own use, such administrator, and those holding under him with notice, in an action of trespass to try title wherein these facts are specially pleaded by the defendant who is entitled to all the estate of the said intestate, will be decreed to hold the land in trust for the defendant so entitled to said estate. Martin v. Robinson, 67 Texas, 381; Fisher v. Wood, 65 Texas, 199; Weaver v. Nugent, 72 Texas, 275.

2.   The court erred in excluding Tucker's testimony on objection made by plaintiff that "it was a transaction between Tucker and Baldwin, and Tucker was Baldwin's warrantor, and Baldwin was dead, and Tucker could not testify as to the transaction," because article 3302, Revised Statutes, does not apply to the case stated.   Oury v. Saunders, 77 Texas, 282.

3.   This being an action of trespass to try title, the defendant claiming beyond common source, and there being a complete and a clear hiatus in plaintiff's alleged chain of title, and the intervener having disclaimed and in open court entered a retraxit, the court erred in refusing the special charge asked by defendant directing the jury to return a verdict for him. Keys v. Mason, 44 Texas, 142.

*E. L. Rector*, for appellee.—1.   If the suit had been brought against Tucker before he conveyed the land, he would not have been allowed to testify as to such transaction.   Having conveyed the land by warranty deed, warranting the title of Baldwin, he was still interested in the result of the suit, though not a nominal party, and if allowed to testify in a case like this the purpose and the intent of the law would be defeated, and the easy evasion of the law would render it practically nugatory.   Rev. Stats. 1895, art. 2303; Bennett v. Land Co., 1 Texas Civ. App., 321; Simpson v. Brotherton, 62 Texas, 170; James v. James, 81 Texas, 376; Abb. Trial Ev., 63, 64; Whart. on Ev., 473; Howard v. Zimpelman, 14 S. W. Rep., 60; Parks v. Caudle, 58 Texas, 221.

2.   The testimony excluded by the court stated no fact which would create a resulting trust in favor of P. C. Tucker in the hands of Scudder. Nor did it state any facts on which he based his claim to ownership.   It was simply a legal conclusion of the witness, and was wholly incompetent for the purpose of establishing title in the witness, or that Baldwin held the land in trust for him.   Howard v. Zimpelman, 14 S. W. Rep., 60; Cunio v. Burland, 1 Posey's U. C., 469.

3.   The court did not err in charging the jury to return a verdict for plaintiff for half the land, because the evidence showed that he held the legal title to said land under an administrator's sale approved and confirmed by an order of the probate court, and such sale can not be set aside in a collateral proceeding on the ground of fraud on the part of the administrator in procuring said order and fraudulent collusion between the administrator and purchaser, by which no consideration was paid to

said administrator and the purchase was made for his benefit, and such order of confirmation can not be reviewed or impeached after two years. Rutherford v. Stamper, 60 Texas, 447; Murchison v. White, 54 Texas, 80; Kleinecke v. Woodward, 42 Texas, 311; Jackson v. Houston, 84 Texas, 625.

4. The court did not err in instructing the jury to bring in a verdict for plaintiff for half of the land, because plaintiff having established the legal title in himself to half the land, and the defendant having sought to avoid his title on the ground of fraud in the administration sale from Tucker to Scudder, the burden of proof was on defendant to establish the fraud, and the evidence of fraud introduced by him was not sufficient to sustain a verdict in his favor on this issue. Grimes v. Watkins, 59 Texas, 138; 1 Greenl. on Ev., 436, 440.

5. If, as claimed by appellants, the administration sale was fraudulent, and Sarah Baldwin purchased from Scudder with knowledge of the fraud, and paid no consideration for the land, and if she and the said Scudder held the land in trust for the use and benefit of those entitled to the estate of Memucan Hunt, then the defendant could only recover to the extent of the interest owned or acquired by him in said estate, and the widow of Memucan Hunt, under whom defendant claims, not being an heir of her said husband, and only having, if anything, a community half interest in said estate, including the land in controversy, defendant only acquired through her an undivided half interest in said land, and could only recover an undivided half interest from the heirs of Sarah Baldwin. This half interest he has already acquired through his deed from T. T. Howard, who held both the titles to this half interest by purchase. Appellee does not hold the other half interest in trust for appellant, and appellant can not defeat appellee's recovery by setting up the outstanding equity in the heirs of Hunt, with which he has in no way connected himself, and the court did not err in instructing the jury to bring in a verdict for plaintiff for half the land. Shields v. Hunt, 45 Texas, 428; Johnson v. Timmons, 50 Texas, 537; Fitch v. Boyer, 51 Texas, 348; Tapp v. Corey, 64 Texas, 596; Lindsay v. Jaffray, 55 Texas, 626; Thomson v. Shackleford, 24 S. W. Rep., 986.

COLLARD, ASSOCIATE JUSTICE.—Suit brought by appellee Chambers against Appellant Baumann, October 2, 1890, to recover an undivided half of two 320-acre surveys in Llano County, originally granted to Ludwig Eltrop, patented to the heirs of M. Hunt, assignee, March 29, 1860. The petition shows that defendant is the owner of the other undivided half of the land and asks for recovery and partition.

It is alleged that both parties claim title from Sarah Baldwin, a common source; that after she became the owner of the land she intermarried with P. C. Tucker, and died without issue, intestate, her husband Tucker and plaintiff Chambers, her brother, surviving her and being her only heirs; that after her death her husband Tucker conveyed both surveys to one Wharton Branch, from whom defendant claims and deraigns title.

Joseph Franklin intervened, claiming the land by deed from Sidney Scudder, but after the evidence was introduced disclaimed all interest in the land. Defendant interpleaded his warrantor, T. T. Howard, filed denial and plea of not guilty, and specially attacked a deed made by Tucker as administrator of the estate of M. Hunt, to Scudder, for fraud, alleging that Scudder and those who claim title from him took and held the land in trust for the estate of Hunt, upon the ground that the sale was not made to Scudder but to Tucker, the administrator, for a grossly inadequate price, to cheat and defraud the estate. Defendant and the warrantor set up title through the estate.

The count directed the jury to return a verdict for plaintiff for one-half, and for defendant for the other half of the land, submitting only the question of improvements to the jury. Verdict was returned as directed, finding the value of the improvements at $160, and of the land recovered by plaintiff at $800, and no damages, and judgment was rendered that intervener take nothing, and for the other parties according to the verdict, and for defendant against his warrantor, ordering partition, appointing commissioners, for plaintiff for his costs against defendant, and for defendant against intervener for all costs of the intervention. Defendant and the warrantor have appealed.

*Findings of Fact.*—We find the facts proved, as follows: Both surveys were patented to the heirs of Memucan Hunt, March 29, 1860. After Memucan Hunt's death his will was duly probated in Galveston County, December 30, 1856, by which he devised all his lands to persons other than his surviving wife, Anne T. Hunt.

December 30, 1856, letters of administration were granted by the Galveston County probate court to Philip C. Tucker, with the will annexed. In the probate court on the 29th day of March, 1867, an order of sale was issued upon the application of the administrator, ordering him to sell various tracts of land of the estate, including the 640 acres involved in this suit, on the first Tuesday in May, 1867, or so much of the land as would be sufficient to bring $7000 cash and the balance on a credit of twelve months, the proceeds to be applied to the payment of debts, costs, and taxes due by the estate. The sale was confirmed, showing that it was made on the first Tuesday in May, 1867, of the 640 acres of land in suit and 640 acres of other land in said county granted to F. Bodeman and other large quantities of land, and showing that the land was struck off and sold to Sidney Scudder at 8 cents per acre, and showing about 6000 acres of other land sold at the same time to Scudder. The confirmation of the sale was made May 31, 1867, and the administrator ordered to make deeds.

July 8, 1867, P. C .Tucker, the administrator, executed deed to Sidney Scudder, conveying the land in suit and other lands "reported" in order of sale and confirmation, in pursuance of the order of confirmation. Plaintiff introduced a part of the transcribed records of Llano County, being a transcript, made by order of the commissioners court, of the

record of deeds of Llano County, which records had been partially de-
stroyed by fire, so much thereof as is legible being as follows: "Sidney
Scudder, to Sarah Baldwin, Deed.   State of Texas—Know all men by—
Sidney Scudder of Galveston—twelve hundred and ei—win of—Fisher
and transferred by—July 18th,—clin Hunt in December, 185—Memucan
Hunt 29th March, 1860, Let—Vol. 29—sold in May, 1867, by order of
court—vey by the administrator of Memucan Hunt—the patent whereof
is delivered herewith and made—hereof—Together with all and singular
the rights and appurtenances to the same belonging or in any wise ap-
pertaining, To have and to hold all and singular the above described
premises unto the said Sarah Bal—heirs and assigns forever, and I cov-
enant to and with the said Sarah—her heirs and administrators and as-
signs, that I have right and lawful authority to sell and convey—and that
it is free and clear of all incumbrance.   I warrant and will forever defend
the same to the—Baldwin and her heirs, executors, administrators and
assigns—ever claiming or to claim the same or any part thereof, by,
through or under me.   Witness my hand and scrawl in lieu of seal at
Galv—this 2nd day of April, A. D. eighteen hundred and sev five.   Sid-
ney Scudder.   (Seal.)"

This is evidently the deed referred to in defendants' answer, as follows:
"About the year 1875, the exact day and month being to the defendant
unknown, said Sidney Scudder, at the instance and request of said P. C.
Tucker, without any consideration moving him thereto, conveyed all of
said land to Sarah C. Baldwin for the sole use and benefit of said P. C.
Tucker, and she, then contemplating marriage with him, took and re-
ceived said conveyance and agreed to hold and did hold said land in trust
for said P. C. Tucker, and if not for said P. C. Tucker, then for said
estate of Memucan Hunt and the persons entitled thereto through the
said Memucan Hunt and Anne T. Hunt."

This deed of Scudder to Sarah Baldwin was duly acknowledged by
Scudder.   The deed was read in evidence by plaintiff as the record of
the original deed described in his petition as the deed to the land in suit
by Scudder to Sarah Baldwin.

In July, 1875, Tucker intermarried with Sarah Baldwin, after which,
on September 21, 1877, she died without issue, intestate, in Galveston,
Texas, leaving Tucker, her husband, and the plaintiff, her only brother,
surviving her, she having no other brothers or sisters nor descendants of
such nor father or mother.

On the 23d day of June, 1884, Sidney Scudder, by deed, conveyed the
land in controversy to Joseph Franklin, the intervener, and conveyed by
the same deed about 6000 acres of other land, which deed was recorded in
Llano County on the 14th day of February, 1891, warranting title as
against all persons claiming the same or any part thereof through or
under him, the grantor.

The certificate, by virtue of which the land in controversy was patented,
was issued to Ludwig Eltrop by the commissioner of Fisher & Miller's
colony, W. F. Evans, on the 27th day of April, 1849, and it was trans-

ferred by Eltrop to Alfred F. James, and was by him transferred to
Memucan Hunt, in December, 1852. The patent was issued to the heirs
of Memucan Hunt on the 29th of March, 1860. Memucan Hunt's will
was probated on December 30, 1856, Mrs. Annie T. Hunt being his wife
at the time.

Philip C. Tucker, by special warranty deed, conveyed the land in con-
troversy October 22, 1877, to Wharton Branch (with 8620 acres of land
described in the deed of Tucker, as administrator, to Sidney Scudder, of
date July 8, 1867) for a consideration of $100 and other valuable con-
siderations.

Wharton Branch, December 26, 1877, conveyed the land in controversy
to T. T. Howard by warranty deed, conveying other lands by the same
deed, for a consideration of $100 and other valuable considerations. T. T.
Howard by warranty deed, dated the 11th day of May, 1881, conveyed
the land in controversy to George L. Epperson for $640, recited in the
deed to have been paid in cash.

George L. Epperson made a quitclaim deed to said land to defendant
Herman Baumann on February 6, 1882, reciting consideration of $1 and
other valuable considerations paid by defendant.

Anne T. Jones, formerly wife of Memucan Hunt, on October 18, 1895,
conveyed by special warranty deed the land in suit to T. T. Howard.

On the 14th day of December, 1875, Anne T. Lipscomb, formerly wife
of Memucan Hunt, made a deed to T. T. Howard, for a recited considera-
tion of $6000—conveyed her "entire interest in and to" the estate of
Memucan Hunt. This conveyance was shown by certified copy from the
records of Bell County. Anne T. Hunt, wife of Memucan Hunt, was
formerly Anne T. Howard. She married Memucan Hunt in 1850, who
died in 1856; she then married Abner Lipscomb in 1860. He died in
1873, and in 1874 she married one Womack, who died in 1875, and she
thereafter married one Jones, who died in 1894.

Philip C. Tucker testified, as follows: "I resided in Galveston in 1852.
Knew Sidney Scudder in the latter years of his life. Knew Memucan
Hunt when in life, and his widow after his decease. I knew Sarah Bald-
win—knew her when a child. Knew her as a widow, and afterwards as
my wife. She was my wife after 1875. I do not from memory recognize
the 640 acres of land in Llano County originally granted to Ludwig El-
trop, stated to be in controversy in this suit, about which I am asked if
I ever had any transaction with Sidney Scudder. I had transactions with
Sidney Scudder concerning different tracts of land, but can not from
memory state as to this particular one. I can not from memory state
whether or not I ever conveyed said land to Sidney Scudder. He never
paid me any consideration for any land I every conveyed to him. I con-
veyed to him several tracts of land which were not for his use and benefit.
Without reference to books and papers, it is impossible for me to identify
it. Certain lands were conveyed by Sidney Scudder to Sarah Baldwin.
Whether or not this was included, I can not state. The lands conveyed
by Sidney Scudder to Sarah Baldwin were conveyed to her by him at my

request. Answering the question why and for what consideration said Scudder conveyed said land to Sarah Baldwin, when, where, and how the consideration was paid, by whom paid and to whom paid, I state that said lands were conveyed at my request. If I ever conveyed this land to Sidney Scudder, it was as administrator of Memucan Hunt, deceased, by virtue of the purchase at public sale and confirmed by the County Court of Galveston County."

The foregoing is all the testimony of Tucker taken by depositions admitted in evidence relating to the sales of the land.

Defendant offered to read from his depositions the following: "Said lands (the lands in controversy in this suit) were conveyed at my request by Sidney Scudder to Sarah Baldwin, the same being claimed by me as my property, he holding them in trust subject to my order." The court excluded this testimony on objection that it was inadmissible to prove fraud in the administration sale, and because the evidence is but the conclusion of the witness, and because it was a transaction between Tucker and Baldwin and between Tucker and Baldwin's warrantor, and Baldwin being dead, Tucker could not testify as to the transaction. Defendant reserved an exception to the ruling and assigns it as erroneous.

There was other testimony as to improvements supporting the judgment which we need not set out, as no question is raised in reference to it.

*Opinion.*—The court excluded, upon objection of plaintiff, the following testimony contained in the depositions of P. C. Tucker: "Said lands (the lands in controversy in this suit) were conveyed at my request by Sidney Scudder to Sarah Baldwin, the same being claimed by me as my property, he holding the same subject to my order." This was the most definite statement of Tucker identifying the land in suit as a part of the land conveyed by Scudder to Sarah Baldwin at the request of the witness, Tucker, and was relevant to the issue that Tucker had Scudder to purchase the land at the administrator's sale by Tucker, for the benefit of Tucker. One of the objections to the testimony made by plaintiff was, that it was not competent in this suit to admit proof of fraud in the administration sale. The other objections to the testimony are so palpably untenable that it is unnecessary to discuss them.

The question raised that proof could not be made in this suit of fraud in the administrator's sale, that is, that the administrator sold the land to himself, is important.

Under the pleadings on this point, by the answer of defendant, we believe the issue was properly made, and that the evidence was admissible. Defendant pleaded the fact that Tucker as administrator of Hunt's estate had sold the land to himself, using Scudder as the ostensible purchaser for that purpose, and that the land was so purchased at a nominal price. Defendant represented and was invested with the title of Mrs. Hunt to her one-half of the land as her community interest; the other half interest of the estate of Hunt is not represented by any party to the suit; but in so far as Mrs. Hunt's interest was involved, the testimony was pertinent.

Plaintiff stood in the place of Tucker, if it were true that he made a gift to Mrs. Baldwin of the land, plaintiff inheriting one-half of her interest, if she had any. The attitude of the parties then is the same as it would be in a suit by Mrs. Hunt against Tucker. If the administrator's sale is held to be unimpeachable in this suit, the sale would carry Mrs. Hunt's interest, as it was made to pay debts which, in the absence of opposing proof, would be presumed to be community; but if the sale did not invest unimpeachable title in the purchaser because of the fraud of the administrator, Mrs. Hunt would be protected in equity to the extent of her half of the land.

There are a number of decisions in this State which seem to hold that such a sale can not be set aside, unless the suit be brought by the proper parties directly for that purpose, in the proper court, and in a reasonable time. Rutherford v. Stamper, 60 Texas, 450; Fisher v. Wood, 65 Texas, 199; Jackson v. Houston, 84 Texas, 624; Dodd v. Templeman, 76 Texas, 62; Byars v. Thompson, 80 Texas, 473; 1 Texas Civ. App., 256; 2 Texas, 382; 6 Texas, 560.

We find no objection to the rule as established in the foregoing cases, that the sale can not be *set aside* except under certain forms and conditions, but we do not believe it to be the law that such a purchaser may not, in an equitable proceeding, be held to hold the property so bought, subject to the rights of the real owners, and that such rights can be adjudged.

Justice Stayton, in the case of Fisher v. Wood, commenting upon the rule laid down in Rutherford v. Stamper, says: "It was held that a district court in an action of trespass to try title brought in the common form, with no averments which could invoke the equity powers of the court, could not set aside a sale made by an administrator at which he was the indirect purchaser. This would seem to be necessarily true, for without the averment of such facts as will entitle a plaintiff to equitable relief, no such relief can be granted. It does not follow, however, from this, that, upon proper averments, a court of equity, while it leaves the legal title standing as directed to be made under the orders of the probate court, will not affect the fraudulent purchaser with a trust and compel him to hold the property as a trustee for those entitled to it. That a court of equity has this power there can be no question, and it matters not whether the fraud which calls it into operation occurred in procuring orders in probate through which sales were directed to be made and confirmed, or in the sales, or in the making of deeds in violation of the order of confirmation."

The foregoing is, we think, an admirable expression of the true principle affecting the rights of parties in such a case in a court of equity, and is applicable to the case before us. The opinion of the learned judge proceeds further, and declares: "That a court of equity, when the rights of bona fide purchasers have not intervened, would have the power to cancel a conveyance made by an executor in violation of the order of a probate court confirming a sale of land, when necessary for the protec-

tion of devisees, heirs, or creditors of an estate, we have no doubt; and this is so, notwithstanding a similar power may exist in the probate court." With this last announcement we are not at present concerned, but the first announcement is pertinent to the issue before us, and we cheerfully adopt it as of controlling effect, especially so, as some other decisions cited seem to have ignored the true rule.

Were Scudder now here, or Tucker as plaintiff suing to recover the land from defendant, we have no hesitation in saying that defendant, to the extent that he represented the title of Mrs. Hunt, could defend the suit upon the ground set up in the answer—that Tucker indirectly became the purchaser at his own sale, paying but a nominal consideration, or none at all, for the land; and this defense, if made, would defeat a recovery by either Tucker or Scudder to so much of the land as defendant acquired through Mrs. Hunt's one-half. This would leave the other half in Mrs. Baldwin's heirs, if plaintiff could exhibit title as alleged, and plaintiff would only be entitled to one-fourth of the land. The other heirs of the Hunt estate, besides Mrs. Hunt, not being in court, defendant could not set up the equity in them by reason of the fraud in the administrator's sale.

But the plaintiff must recover, if at all, upon the strength of his own title, and not on the weakness of the defendant's title, and defendant can not be required to defend unless plaintiff exhibits title. Whether there was a conveyance by Scudder to Sarah Baldwin or not is by no means conclusive, certainly not of such conclusiveness as to justify the court in instructing the jury peremptorily to find for plaintiff the land claimed. It was error to so charge. Defendant's answer did not relieve plaintiff from making the proof of his own title, there being a general denial filed by defendant. The matter should have been submitted to the jury. The court, therefore, erred in instructing the jury to find for plaintiff. The copy of the partially destroyed record of the supposed deed to the land by Scudder to Sarah Baldwin can not be held to be a conveyance by him to her of the land. It can only be received in evidence as a circumstance, with other evidence, tending to show a conveyance of the character and effect claimed. This question must be left to the jury under all the testimony. If the jury should find such a conveyance, then the special defense set up will be in order, but no defense need be made at all to defeat plaintiff's recovery or part recovery if the evidence fails to show such conveyance.

We can not say that the court should have given the special charge asked by defendant, requiring the jury to return a verdict for him. There was no error in refusing the charge.

We find no other assignment that requires decision at this time, the foregoing disposing of all questions that will probably arise on another trial.

The judgment of the court below is reversed, because of the errors above pointed out, and the cause is remanded.

*Reversed and remanded.*